Mr. Alexander. May it please the Court. Good morning. My name is Daniel Alexander and I represent the appellant in this case, Mr. Ronnie Simon. The issue in this case is whether ERISA grants Mr. Simon an independent enforceable right that he may vindicate as a pro se litigant. And I think the common theme running between the two issues that the briefs presented in this case is that the Supreme Court has made a statement on an issue and that language has been taken and stretched beyond where it was intended to go when the Court said it. Okay. Well, let's forget Russell. Okay. Toss it out the window. Let me ask you this. You, you recognize in your brief that, that you are representing the plan's interest. So my question is, why isn't this like a trust or an estate, a probate estate that can't sue for itself, and an administrator or a trustee has to bring the suit, but can't do so without a lawyer? Well, Your Honor, I think this case is exactly like the case of, of a trust or a trustee or an estate and an administrator, for that matter. I just think the facts in this case have been turned around. But they can't sue. They can't represent. You have to, they have to have a lawyer. Absolutely. And I appreciate that, Your Honor. But I think if a beneficiary of a trust is coming to the court saying, I'm suing the administrator of that trust for breach of fiduciary duty, that the beneficiary can certainly do that per se. Even if what ultimately has to happen is the administrator of that trust has to pay money back to the trust that's being held for the benefit of that beneficiary. That's the case we have here. We don't have the case where the trustee is coming to court and saying, I represent the trust. What we have is the beneficiary coming to court and saying, I'm suing for breaches of fiduciary duty against me, even though money will ultimately have to be paid back to the trust. And I think that's almost exactly the same thing, albeit in a different context. And I apologize for my language in my brief that if I overstated the application of Winkleman to this case. But in the Winkleman context, what you had was parents saying, we have an independent enforceable interest in a free, appropriate public education for our children. And Justice Scalia made it very clear in his concurring and dissenting opinion that that was a remedy that belonged to the child, period. And so to the extent that what these parents were coming in and doing, it's the same situation, Your Honor. What they were doing was seeking a remedy that clearly belonged to someone else, but they had an independent right in it. And I think the same is true of your question specifically. In the trust context, I absolutely agree. It is, but it isn't. There's no question, it seems to me, that a participant in an ERISA plan has got an independent right to sue for breach of fiduciary duty. The Supreme Court recognized that in Verity. Okay. But that's not exactly what you're doing. I mean, you are suing for breach of fiduciary duty having to do with the way Hartford does business, basically, across the board. And you want it to change the way it administers assets and processes claims. Now, do you have an independent right under that section of ERISA to pursue that claim, or do you have to go under, what is it, subsection 3? I'm not sure what the reference to subsection 3. No, Your Honor, I don't think you have to go under subsection 3. I absolutely think that that independent enforceable right, as in the Winkleman case, comes from a reading of the entire ERISA statute. But I think with regard to ERISA, the statute is even more clear. And there's a stronger connection between the independent enforceable right with regard to ERISA than there was with the IDEA. In fact, I think in the Winkleman analysis ---- That's not quite true because the parents are the ones who have to shell out the reimbursement. I mean, the kid doesn't get reimbursed. The parents get reimbursed. And so, in effect, that seems kind of an obvious scenario. This one isn't quite as self-evident. I agree with that particular analysis of Winkleman and that particular ---- I agree with the Court's statement. But what the Court specifically said in Winkleman was not that you have a right to sue for this reimbursement. What they said was you have a right to sue for a free appropriate public education. You have an independent enforceable right in a free appropriate public education. And ironically, the Supreme Court, in its Russell opinion, in this very same footnote, identified the interest that ERISA participants have. It said, indeed, the common interest shared by all four classes of people who can sue under 1132A2 is in the financial integrity of the plan. So I do think there's absolutely an independent enforceable interest under 1132A2 that the Supreme Court's already identified. Of course, the applicability of Russell to this case, I think, is marginal. But I think in the Winkleman case, the Court took five steps to get to something under IDEA, to get to a result under IDEA that I believe, in the ERISA context, only takes two steps. In that case, the Court said, we have a proposition that a party aggrieved may file a civil action. The parents have an independent enforceable interest in a specific remedy. And that's the child's free appropriate public education. That was step two. Step three was, thus, if there is no free appropriate public education, parents are a party aggrieved. Four. Parents, therefore, may file a civil action seeking a free appropriate public education for a child. And then number five. We apply 28 U.S.C. 1654, and parents may appear on their own behalf. Well, I think in the ERISA context, we come in after step four and before step five. ERISA dropped. One thing you might comment on, it's troubling, is the parent only, if the parent loses, the parent is only messing things up for his own child. And or maybe not, because he's going to have to just go pay for an education that the parent thinks is preferable. If you mess up, if a participant in the plan messes up in a lawsuit that charges that Hartford's entire way of doing business is improper, it loses. Doesn't that have an incredible spillover effect on other people? Well, Your Honor, I think what you're talking about is the collateral estoppel or res judicata effect. And I think it's far from clear in the Ninth Circuit that res judicata or collateral estoppel would apply. Now, I know you were a panelist on the Landwehr case, and I won't presume to tell you what your own panel meant in that case, but I think what I take from that case and what Comair tells us is that the plaintiff is the plaintiff, and it's individual facts regarding the plaintiff. I think you can go to the record in this case, the complaint at paragraph 23, that's tab 5 in the excerpts of record, it's page 22 of the excerpts of record, has individual facts regarding this plaintiff. And I don't think necessarily if a case is litigated on those facts that it applies to anyone else. The second part of this analysis that I would leave you with. I mean, may I ask a question, please? Certainly, Judge McNamara. And that is, do you think it's clear in the record that your client was seeking to only represent himself and not trying to bridge both of those and say, well, I am, but I'm also representing other people similarly situated? Do you think it's really that clear in the record? I do, Your Honor, just by virtue of the fact that that's what the statute requires if you are coming in as a participant. The Ninth Circuit does not recognize a situation where you have to seek to sue on behalf of a class. And I apologize, Your Honor, but my time is running short and I would like to reserve the remainder for rebuttal. Have I answered your question, Judge McNamara? That's fine. Thank you. All right. Thank you, Mr. Alexander. Good morning, Your Honors. Dan Marmolevsky on behalf of the Hartford defendants. Let me begin with the question that was just asked by Judge McNamara. I think the record is clear if you look at page 110 of the supplemental excerpts of record where the plaintiff, Mr. Simon, wrote unambiguously, the plaintiff in this case does not seek remedies for his own individual benefit. That is the beginning and the end of the analysis. As this Court wrote a year ago in Stoner v. Santa Clara County Office of Education, the default position is that an individual wanting to prosecute or defend an action in Federal court has to have a lawyer unless the individual is permitted to pro se under 28 U.S.C. Section 1654 or another Federal law. Well, you know, what you're basically doing is saying because he doesn't – because this recovery, whatever it is in this case, will only benefit the plan, he has no right to bring the action. I'm not saying he can't bring the action. I understand. Just a second. He has no right to bring the action without a lawyer. That's correct. So my question is why not? Because you're jumping around to the remedy and saying just because the remedy benefits the plan, it is necessarily – he's necessarily representing the plan. That's correct. Doesn't Winkleman pretty much answer that question adversely to you? No, absolutely not. In Winkleman, the plaintiffs argued that they were entitled to proceed pro se under two alternative basis. The first basis was that under 28 U.S.C. Section 1654, they were prosecuting the claim for their own benefit. The second was that they alternatively had a right to sue on behalf of someone else, in this case the minor child. Yeah, I understand that. But what the court said, the court's rationale allowed the parents to go forward on FAPE, which is a right that belongs to the child. No. No, the court said that there are independent, separate, enforceable rights of the parent. But it didn't parse them out. That was what Scalia wanted. That was the position that Justice Scalia took. And the court did not accept that kind of fine-tuning. So as I read it, if you have a right, which clearly there is a right in a participant individually to bring suit for breach of fiduciary duty, despite the fact that the recovery, if any, will go to benefit the plan and only him remotely. Okay. Let me – there's two different concepts there. First, let me deal with Winkleman. And the court, Justice Alito, walks through the statutory scheme in the IDEA and identifies those portions of the scheme, of the statutory scheme that talk about peculiar to the parent as opposed to the child. One, which Your Honor mentioned earlier, was the right to reimbursement. The Winklemans had paid private school tuition for their child. I understand. They don't have a right to a free public education. Their child does. The child has the right to the education. The parent had the right to be reimbursed. The parent also had a right to participate in an individualized – in the formulation of an individualized education plan. That's not something that the child had a right to do. That was a right that the parent had. And the court said we're analyzing this case under Section 1654, and everybody agrees that if under the statutory scheme there are independent rights to the parent, then they may proceed pro se. Well, he said there's an independent right by statute in the participant to sue for breach of fiduciary duty. What this court said in Stoner is that you need to distinguish between Article 3 standing, that is, that Congress has said you may be the named plaintiff, and whether you are the person who can be the beneficiary of the lawsuit. In Stoner, you had someone who was filing a claim under the False Claims Act. Pursuant to the statutory scheme, Stoner had the right to bring the lawsuit, but Stoner did not have the right to bring the lawsuit without a lawyer because Stoner wasn't the real party in interest. In that case, the government was the real party in interest. What this court said 20 years ago – But the plan can't bring its own suit. The United States can. The plan cannot. That's correct. Well, so somebody – whenever there's a breach of fiduciary duty claim, there inevitably is going to be a disconnect between the right and the remedy. I mean, that's just in the nature of it. Well, it depends on the type of the breach of fiduciary duty. If it is a breach of fiduciary duty claim where the planned participant individually has suffered an injury, then under the wording of Section 1654, that qualifies as his own case. And what this Court said 20 years ago in C.E. Pope Equity is that you look at who the real party in interest is. Who is the party that is going to benefit? Well, who is the real party in interest here? The real party in interest, unambiguously according to the statute and as set forth in the Russell case, is the plan. It can't sue for itself. That's the point. It cannot sue for itself. So in this situation, the real party in interest, you would always win because there's nobody who can sue for himself. Again, Your Honor, there's a distinction between who has standing and who is going to benefit by the action. I don't think I'm confusing standing. Okay. I don't mean to be. Okay. I mean to be saying the plan cannot bring its own lawsuit. Right. But the real party in interest is the party that stands to benefit from the reward. Well, you agree that he has the right to sue for breach of fiduciary duty with a benefit that ended up in the plan. Absolutely. Okay. What you disagree with is that he can do that pro se. That's correct. And the reasons why he cannot do that pro se, first of all, he needs to have a statute on a statutory basis to permit him to proceed pro se, and if he's not the one who's going to benefit, then he cannot. That's the problem. I mean, where do you get that from? That just because he has the right to bring the suit and just because the remedy will go elsewhere. Where I get that from is he's not. It does not make him not a real party in interest for purposes of pursuing that lawsuit. Okay. Where I get that from is judicial interpretation of the phrase, their own cases in Section 1654, which has never authorized someone in Mr. Simon's position to prosecute a claim that's going to impact a plan that's going to impact an entity that's going to have an impact on interested parties that are not participating in the action. You can have a corporation with one shareholder. You can have an LLC with one member. But the courts are unanimous in saying that because the claim is the claim that belongs to an entity, because we're talking about the rights of an entity, an individual has no right to proceed pro se. There is no case that permits, whether we're talking about a corporation, we're talking about a partnership, we're talking about a trust, that permits an individual to proceed pro se. And similarly, there is no case that we're cases for the benefit of an ERISA plan that permits one participant in the plan to be the one who is controlling the fate of a claim concerning an injury to the plan. The Secretary of Labor has the right to bring an action on behalf of the plan. If an individual brings an action alleging the same claim and there is an adverse determination, that determination is binding on the Secretary of Labor. And it's for that reason that the default position is that you have to have a lawyer, except in those unique circumstances where the person proceeding pro se is the person who was injured. Having a lawyer present is certainly no guarantee of the result. Well, I don't necessarily disagree, but that's what Judge Noonan wrote in C, Pope Equity Trust, is that there is a guarantee of professional competence and professional responsibility when you have a lawyer. And I don't disagree that that's not always going to be the case, but there is a greater level of assurance that the claims of the entity, or in this case the claims of interested parties who are not before the court, whether it's other plan participants, whether it's other future beneficiaries of the plan, whether it's the Secretary of Labor, are not going to be, their interests have been deemed not to be adequately represented if you are allowing someone to proceed pro se. And so I would ask the court to look at the principles that this court set forth in C, Pope Equity Trust, and to look again at Stoner, where there are claims that someone has the right to bring as a plaintiff, but because the interests are not those of the plaintiff, this court has made clear they cannot be defended. Very briefly, let me just talk on the merits of the actual claim. Your time has expired, so it's going to be extremely brief. Okay. Pegra made clear that if you are making a broad challenge to the structure of a plan but it's not tethered to any example of concrete harm, that doesn't state a claim for breach of fiduciary duty. Just last month. Okay. Let's leave that for another day. We've got enough problems. Okay. Thank you, Your Honor. Mr. Alexander. Yes, Your Honor. I would like to very briefly, it seems that the race-judicata collateral estoppel issue is raising a lot of questions. I would like to just explain that the ERISA itself provides procedural safeguards in the form of service required. This is Section 1132H. Service is required on the Secretary of Labor and the Secretary of Treasury in any complaint filed under 1132A2. The Secretary of Treasury or the Secretary of Labor can then decide whether they want to intervene in the case. Additionally, in the Winkleman case, I think, again, with regard to individual facts, I think governing cases and the facts about this individual plaintiff deciding where the case goes, I think Winkleman was far closer to a case where you would find collateral estoppel or race-judicata for what happened to the child because of the parent's litigation. It's the same set of facts. It's the exact same child. It's the same IEP. It's the same FAPE. So I don't think that that's necessarily a situation that concerned the court enough to stop what they were doing in Winkleman and talk about collateral estoppel or race-judicata. Additionally, I want to remind just to, again, state the purpose of ERISA is to protect the interests of participants and their beneficiaries by providing for appropriate remedy sanctions and ready access to the federal courts. And I think that's an important point for the court to consider. We respectfully, Mr. Simon respectfully request that the court reverse and remand. Okay. Mr. Alexander, are you going to continue on this case? Your Honor, the plan has not been, and I think the purpose of us being in this court, was to determine whether he could pursue the case pro se. I don't think this matters. I was just hoping you might moot it. I appreciate the question, but I don't think that has ever been the plan. Thank you, counsel, both of you, for your argument. And the matter just argued will be submitted.
judges: Hall, Rymer, McNamee